John **HYLAND**

v.

**NEW HAVEN RADIOLOGY ASSOCIATES.**

**Civ. No. N–82–300 (PCD).**

United States District Court, D. Connecticut.

April 16, 1985.

**618**

Joseph D. Garrison, New Haven, Conn., for plaintiff.

David R. Schaefer, Robert J. Lofgren, Brenner, Saltzman, Wallman & Goldman, New Haven, Conn., and James A. Wade, Robinson & Cole, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Defendant, New Haven Radiology Associates (Radiology), has moved for summary judgment as to the complaint's sole remaining count, on grounds that the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* (ADEA), does not reach decisions as to employment of shareholders of a professional corporation *inter se.*

*Facts*

Plaintiff, John Hyland, M.D. (Hyland), was a founding member of defendant, a Connecticut professional service corporation, formed in 1972 for the exclusive provision of radiological services to the Hospital of St. Raphael in New Haven, Connecticut.

Each of the five founding radiologists (members) capitalized Radiology by the same amount; received the same amount of stock; was an officer and director of

Radiology and executed identical employment and stockholders agreements. Each member received compensation of $60,000 per year and shared equally in any profits or losses. The stockholders agreement provided that stock could only be held by a member. A withdrawing member must sell, and the remaining members must purchase, the withdrawing member's stock.

Radiology employed physicians who were not members. After such a physician had worked for a number of years, the members decided whether to offer him or her membership. If admitted, the physician purchased enough stock to equalize the number of shares held by all members. He or she received the same salary and benefits as each of the founding members[1] and had the same right to share in the profits and management of Radiology.

On July 22, 1980, Hyland was expelled from Radiology by its other members. He was fifty-one years old at the time. Hyland entered into a Memorandum of Agreement with Radiology setting forth the terms of his employment termination, one of which was that the remaining members of Radiology would purchase his stock within ninety days of his termination. Hyland alleges that Radiology obstructed and delayed this purchase by refusing to meet with him and by improperly valuing Radiology's net worth. Hyland brought this action seeking money damages and equitable relief for alleged age discrimination in violation of ADEA, as well as breach of contract, wrongful discharge and intentional infliction of mental distress. By rulings on February 2, 1983, and January 24, 1984, this court dismissed all but the ADEA claim and dismissed the latter as to the individual members of Radiology.

*Discussion*

I.

■ Radiology moves for summary judgment on grounds that Radiology is not an "employer" and that Hyland is not an "employee" as defined by the ADEA.

---

1. The only exception was Dr. Robert Shapiro, one of the founding members, who received an additional $500 per month, paid into a deferred compensation account. This additional payment was authorized by the members at one of their regular meetings.

Since a professional corporation meets the ADEA definition of "employer," *cf. EEOC v. Dowd & Dowd, Ltd.*, 736 F.2d 1177 (7th Cir.1984), the claim that Radiology is not an employer is unfounded. The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees...." 29 U.S.C. § 630(b). "Person" is defined as "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized group of persons," 29 U.S.C. § 630(a). The parties do not dispute that Radiology engages in an industry affecting commerce with twenty or more employees, excluding the members.

## II.

Defendant's second claim is that Hyland cannot be considered an "employee" under ADEA and thus does not fall under its protection. The ADEA offers little guidance, defining employee as "an individual employed by any employer...." 29 U.S.C. § 630(f). The ADEA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Title VII), and the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (FLSA), have similar definitions of employee and employer.[2] Because the purpose of all these anti-discrimination acts is similar, cases interpreting one act are given substantial weight when interpreting the other acts. *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Geller v. Markham*, 635 F.2d 1027, 1032 (2d Cir. 1980).

The legislative history of Title VII shows that "employee" was "intended to have its common dictionary meaning, except as expressly qualified by the Act." 110 Cong. Rec. 7216 (Remarks of Senator Clark, April 8, 1964). A subsequent amendment to Title VII that would have made the Act inapplicable to physicians employed by a hospital was defeated. During debate on this measure, Senator Javits stated that "this amendment would go back beyond decades of struggle and of injustice ... and thus lock in and fortify the idea that being a doctor or surgeon is just too good for members of a minority, and that they have to be subject to discrimination in respect of it, and the Federal law will not protect them." 118 Cong.Rec. 1463–64 (1972). However, this remark does not speak to the issue in this case, whether the anti-discrimination statutes were meant to protect professionals who have an ownership and management status inseparably intertwined with more traditional employee status.

Plaintiff argues that Radiology should be deemed a corporation. If so, its members as well as staff would be employees of the corporation and thus protected by ADEA. Plaintiff stresses that defendant has adopted corporate status under Connecticut law; is treated for tax purposes as a corporation; and has referred to Hyland as well as other members of Radiology as "employees" during the course of this action. Plaintiff contends that since Radiology considers itself a corporation for tax and liability purposes, consistency demands that it be treated as a corporation for all purposes. *Hishon v. King & Spalding*, 678 F.2d 1022 (11th Cir.1982), *rev'd on other grounds*, ___ U.S. ___, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). However, the general rule is that an entity's legal status should be ignored when necessary to avoid exalting form over substance. Case law under the Internal Revenue Code has long recognized such a rule. *See, e.g., Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Treasury regulations interpreting the Code's definition of "corporation" ignore the state law status of an entity and make its tax treatment entirely dependent on the practical realities of how

---

**2.** Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees...." 42 U.S.C. § 2000e(b). It defines "employee" as "an individual employed by an employer...." 42 U.S.C. § 2000e(f).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d). It defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).

its business is conducted. 26 C.F.R. § 301.-7701–1(c).

Plaintiff also argues that since Radiology, as an entity separate from its members, controls its members' performance and compensation, its members, conceptually, must be deemed employees. This separate entity theory has been adopted by the Supreme Court on one occasion. *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). There, a partner in a three member law firm tried to claim a fifth amendment privilege for subpoenaed partnership financial records. The Court held that the individual partner's fifth amendment privilege did not extend to the partnership's records because the partnership was an entity with a separate existence. The Court noted that many private partnerships are closer in size, structure and impersonality to corporations than to voluntary associations. *Id.* 417 U.S. at 93–94, 94 S.Ct. at 2185–86. *Bellis*, however, is distinguishable, as it dealt with a factual and legal situation completely different from the present case. The purpose and policy reasons for refusing to shield partnership records from production have nothing to do with the remedial purpose of the anti-discrimination acts.

Most courts, in determining whether a plaintiff has employee status under one of the anti-discrimination acts, have adopted an "economic realities" test, first propounded by the Supreme Court in *NLRB v. Hearst Publications*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). Under this test, courts look to the economic realities of the plaintiff's employment situation, especially the plaintiff's ownership and management interest in the employing entity. *Burke v. Friedman*, 556 F.2d 867 (7th Cir.1977). The *Burke* court held that a partner could not be considered an employee under Title VII. Since partners manage and control the business and share in profits and loss-

es, *Burke* reasoned that they must be employers and thus could not be employees as well. *Id.* at 869. The Equal Employment Opportunity Commission has recently embraced the economic realities test, holding in Decision No. 85–4, 3/18/85, *reported in* 53 U.S.L.W. 2492 (4/9/85), that an individual's ability to control and manage the business is determinative as to whether a "partner" is a partner in fact or an "employee" for Title VII purposes.

The same test has been applied to deny employee status to shareholders of a law firm operating as a professional corporation. *EEOC v. Dowd & Dowd*, 736 F.2d 1177 (7th Cir.1984). The *Dowd* court found that "the role of a shareholder in a professional corporation is far more analogous to a partner in a partnership than it is to the shareholder of a general corporation." The Court of Appeals for the Eleventh Circuit, deciding an issue that was not later reached by the Supreme Court, has also adopted *Burke's* economic realities test and held that partners in a law firm are not "employees" under Title VII. *Hishon*, 678 F.2d at 1027. No other authority bearing on this issue has been found in the circuit courts.[3]

The Supreme Court has yet to face the issue. It has applied an economic realities test to a knitting cooperative and held that individual owner-knitters were nevertheless employees under FLSA. *Goldberg v. Whitaker House Cooperative*, Inc., 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). In *Hishon*, —— U.S. ——, 104 S.Ct. 2229, 81 L.Ed.2d 59, the Court was presented with the issue but did not decide it, ruling instead that partnership consideration was one of the "terms, conditions or privileges of employment" protected from discriminatory application by Title VII. Justice Powell concurred in order to make clear his

> understanding that the Court's opinion should not be read as extending Title VII to the management of a law firm by its

---

**3.** A joint venturer who capitalized a company with other partners; shared in the profits and losses; and took advances from the company was held not to be an employee under FLSA in *Alberstein v. Irwin B. Foster & Sons Sportswear Co.*, 193 F.Supp. 161 (E.D.Pa.1961).

*Lucido v. Cravath, Swaine & Moore*, 425 F.Supp. 123, 128 (S.D.N.Y.1977), mentions that this is an unresolved issue and assumes, in *dicta*, that partners are not employees under Title VII.

partners. The reasoning of the Court's opinion does not require that the relationship among partners be characterized as an 'employment' relationship to which Title VII would apply. The relationship among law partners differs markedly from that between employer and employee .... The judgmental and sensitive decisions that must be made among the partners embrace a wide range of subjects. The essence of the law partnership is the common conduct of a shared enterprise. The relationship among law partners contemplates that decisions important to the partnership normally will be made by common agreement....

*Id.* 104 S.Ct. at 2236 (footnotes omitted).

### III.

Applying the economic realities test to the present case, Radiology amounts to a partnership in all but name. The structure of defendant's business is an equal division of ownership and management, and the equal sharing of profits and losses among the members, all hallmarks of partnership status. *EEOC v. Dowd & Dowd,* 736 F.2d at 1178; *Burke,* 556 F.2d at 869. Radiology scrupulously observed this equality principle even to the extent of reducing present members' stock holdings to give new members an equal share of stock. Radiology's purpose in incorporating was to gain advantageous tax and civil liability treatment. In reality, Radiology was operated and managed as a partnership. As a member of this common enterprise, Hyland cannot separate himself from his management and ownership participation in order to be considered as an "employee." Since there are no material facts in dispute, and plaintiff is not an "employee" under ADEA, defendant's motion for summary judgment is granted.

### IV.

Plaintiff's reply brief to defendant's motion for summary judgment seeks the imposition of sanctions against defendant under Rule 11, Fed.R.Civ.P. Plaintiff complains that defendant's motion is dilatory because defendant must have believed there was a material fact in dispute (i.e. whether Radiology was essentially a partnership or a corporation) and thus it knew it could never prevail on its motion. This argument confuses factual and legal issues. The facts in the present case are virtually undisputed.[4] The issue is one of law: whether the facts of Radiology's operation and plaintiff's role as one of its members confers "employee" status on plaintiff under the ADEA.

Plaintiff's second claim for sanctions is that defendant's motion should be filed with the Internal Revenue Service so that it can review defendant's tax status. As discussed above, it is entirely appropriate to claim that an entity is a corporation for tax purposes and a partnership for other purposes.

Plaintiff's motion for sanctions is denied.

SO ORDERED.

---

4. Plaintiff agrees with much of defendant's statement of material undisputed facts and only generally denies its other statements. When a summary judgment motion is supported by affidavits, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 56(e), Fed.R.Civ.P.; *Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir.1972).