794 F.2d 793
 41 Fair Empl.Prac.Cas. 183,
41 Empl. Prac. Dec. P 36,460, 55 USLW 2043
 John HYLAND, M.D., Plaintiff-Appellant,
v.
NEW HAVEN RADIOLOGY ASSOCIATES, P.C. and Gerald Fishbone,
M.D., Shelby Galloway, M.D., Arthur Knowlton, M.D., Edward
Prokop, M.D., Solomon Schwartz, M.D., and Robert Shapiro,
M.D., individually and in their corporate capacities,
Defendants-Appellees.
 No. 253, Docket 85-7396.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 2, 1985.
Decided June 27, 1986.
 
 Joseph D. Garrison, New Haven, Conn. (Garrison, Kahn, Crane & Silbert, New Haven, Conn., Lucinda M. Finley, Yale Law School, New Haven, Conn., of counsel), for plaintiff-appellant.
 David R. Schaefer, New Haven, Conn. (Robert J. Lofgren, Brenner, Saltzman, Wallman & Goldman, New Haven, Conn., James A. Wade, Robinson & Cole, Hartford, Conn., of counsel), for defendants-appellees.
 Before CARDAMONE, PRATT and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiff-appellant, John Hyland, M.D., claiming a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 623(a)(1), alleges that he was forced to resign as an employee, officer and director of defendant-appellee, New Haven Radiology Associates, P.C. ("NHRA") because he was fifty-one years of age. Following extensive discovery, NHRA, a professional corporation, moved for summary judgment, asserting that Hyland lacked the necessary standing to invoke the protections afforded by the ADEA. Applying an "economic realities" test, the District Court for the District of Connecticut (Dorsey, J.) granted the motion, finding that NHRA "amounts to a partnership in all but name," Hyland v. New Haven Radiology Associates, 606 F.Supp. 617, 621 (D.Conn. 1985), and that Hyland was, in effect, a partner in the enterprise. According to the district court, Hyland therefore was not an employee entitled to claim the benefits provided by the ADEA. Because we find that there is no basis for a finding that NHRA is a partnership, and that Hyland was in fact a corporate employee, we reverse and remand.[1]
 
 I.
 
 2
 Appellant and four other radiologists organized NHRA in 1972 as a professional services corporation under the laws of the State of Connecticut to conduct the practice of radiology. Pursuant to the terms of a stockholders' agreement,[2] each of the five founding members contributed the same amount of capital for equal shares in the corporation and an equal voice in management. Profits and losses were divided evenly among the members, all of whom served as corporate officers and directors. The stockholders agreed that stock could be held only by shareholder-members, who were required to be licensed physicians. Upon the death, withdrawal or termination of any member, the member or his estate was required to sell, and NHRA to purchase, that shareholder's stock at a price fixed in accordance with the valuation provisions of the agreement. No stock could be held in the corporation by a non-member or non-employee. The stockholders' agreement provided for the admission to membership of additional "Stockholder-Employees," who would enjoy the benefits of the corporation and participate in the management of its affairs equally with the other shareholders.[3]
 
 
 3
 Each shareholder also signed a separate two-year renewable employment agreement with the corporation, and the terms of these agreements were substantially identical. All members were compensated at the rate of $60,000 annually, subject to withholding of applicable taxes. A further provision in each doctor's employment agreement allowed for the payment of bonuses to members in the sole discretion of the Board of Directors. Each physician was required to be "a full time employee of the company during the term of this agreement," with a duty to devote his best efforts in rendering services to NHRA's patients. He also was required to comply with all company policies and regulations, to turn over to the corporation all compensation earned from rendering professional services of any kind, and to maintain membership in medical societies as required by the Board of Directors. The agreement also entitled each member to a four-week paid vacation; disability payments from the corporation; leave to attend, and reimbursement for the cost of, educational programs; and certain payments upon termination of employment.
 
 
 4
 The corporation performed all radiological services for St. Raphael Hospital. Each member agreed that he would not work in any radiological capacity for St. Raphael Hospital during the two-year period following termination of his corporate employment. No individual shareholder-member could be terminated without cause from NHRA unless by the vote of three-fourths of all stockholder-members. Hyland's employment agreement differed from those signed by the other co-founders in that he was required to give six-months' written notice of his intention to leave the corporation's employ. The agreement entered into between NHRA and Robert Shapiro, the corporation's president, also was somewhat different from the others in that it called for a payment of $500 a month to a deferred compensation account to replace a benefit Dr. Shapiro lost from another source when he joined NHRA.
 
 
 5
 On July 22, 1980, upon the unanimous consent of all the other members, Hyland, then fifty-one years of age, was asked to resign his position as a member and employee of NHRA. According to NHRA, the request was prompted by complaints of appellant's unavailability, lack of cooperation and abusive conduct. Thereafter, appellant entered into an agreement with the corporation relating to the conditions of his termination as an employee, shareholder, director and officer in the corporation. This agreement dealt with the repurchase of Hyland's stock, severance pay and the lump-sum withdrawal of a profit-sharing account balance, among other things.
 
 
 6
 As a result of his termination, appellant brought this action, claiming NHRA discriminated against him in violation of section 623(a)(1) of the ADEA. Hyland argued that the corporation may be classified as an employer under the Act, and that he and its staff were employees protected by the ADEA. The corporation moved for summary judgment on the grounds that it was not an employer and that Hyland was not an employee as defined by the ADEA. It contended that because NHRA is more like a partnership than a corporation, Hyland should be considered a partner and not an employee. The district court granted the motion. In doing so, the court decided that NHRA chose to do business in the corporate form merely "to gain advantageous tax and civil liability treatment," 606 F.Supp. at 621, and that although the corporation could be classified as an employer, Hyland could not be classified as an employee. Judge Dorsey found that NHRA was actually managed and operated like a partnership and held that Hyland, as a member of this common enterprise, could not separate himself from his management and ownership role so as to be considered an "employee."II.
 
 
 7
 Appellant advances his claim under section 623(a)(1) of the ADEA, which provides:
 
 
 8
 It shall be unlawful for an employer--to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....[4]
 
 
 9
 The statute is considered remedial in nature and must be given a liberal interpretation in order to effectuate its purposes, Zimmerman v. North American Signal Co., 704 F.2d 347, 353 (7th Cir.1983); E.E.O.C. v. First Catholic Slovak Ladies Association, 694 F.2d 1068, 1070 (6th Cir.1982), cert. denied, 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983). Its language demonstrates a single congressional aim--to prohibit "age discrimination by employers against employees and applicants for employment." Levine v. Fairleigh Dickinson University, 646 F.2d 825, 828 (3d Cir.1981). A plain reading of the Act indicates that its protection extends only to those individuals who are in a direct employment relationship with an employer, and that a claim under its provisions lies solely in favor of a person who is an employee at the time of termination. See Garrett v. Phillips Mills, Inc., 721 F.2d 979, 980-81 (4th Cir.1983).
 
 
 10
 The Act defines employer in general terms as "a person engaged in an industry affecting commerce who has twenty or more employees...." 29 U.S.C. Sec. 630(b). "Person" is defined as "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons." 29 U.S.C. Sec. 630(a). The ADEA definition of employee, "an individual employed by any employer," 29 U.S.C. Sec. 630(f), excludes only elected officials and their personal staff members, id.
 
 
 11
 The Fair Labor Standards Act of 1938, 29 U.S.C. Sec. 203(a), (d), (e)(1) (1982) ("FLSA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e(a), (b), (f) (1982) ("Title VII"), and the ADEA carry nearly identical provisions defining "employer" and "employee." Since all three statutes have a similar purpose--to stamp-out discrimination in various forms--cases construing the definitional provisions of one are persuasive authority when interpreting the others. See Lorillard v. Pons, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); Geller v. Markham, 635 F.2d 1027, 1032 (2d Cir.1980), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). In various situations calling for the application of these statutes, an individual's status as a major stockholder, officer or director of a corporation has been found to be compatible with his or her status as an employee. See, e.g., Zimmerman, 704 F.2d at 350-54 (ADEA plaintiff, a corporate vice president and one-third shareholder, considered as employee); First Catholic Slovak Ladies Association, 694 F.2d at 1070 (officer-directors held entitled to ADEA protections); Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 920 (2d Cir.1981) (high level executive employee protected by ADEA); Novotny v. Great American Federal Savings & Loan Association, 584 F.2d 1235, 1261 (3d Cir.1978) (person holding positions of secretary and director held an employee for Title VII purposes), vacated on other grounds, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); Hoy v. Progress Pattern Co., 217 F.2d 701, 704 (6th Cir.1954) (one-eighth shareholder, vice president, director and chairman of board may be employee within purview of FLSA). This is so because "[t]here is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship." Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 32, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961) (shareholders in knitwear cooperative held to be employees under FLSA). "Once a contractual relationship of employment is established, the provisions of [the ADEA] attach and govern certain aspects of that relationship." Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984) (Title VII case) (footnote omitted).
 
 III.
 
 12
 It is generally accepted that the benefits of the antidiscrimination statutes referred to in Part II, supra, do not extend to those who properly are classified as partners. In Hishon, 104 S.Ct. at 2236, where the Supreme Court held that a law partnership's decision to deny admission into the partnership of a female associate/employee was covered by the provisions of Title VII, Justice Powell's concurring opinion expressed the view that Title VII does not cover the members of a partnership. The concurrence noted, however, that "an employer may not evade the strictures of Title VII simply by labeling its employees as 'partners.' " Id. at 2236 n. 2. It is by reason of their unique status as business owners and managers that true partners cannot be classified as employees. Burke v. Friedman, 556 F.2d 867, 869 (7th Cir.1977).
 
 
 13
 The Equal Employment Opportunity Commission ("EEOC"), charged with the interpretation and enforcement of both Title VII and the ADEA, examined an eight-member law firm and found that the partners could not be classified as employees for Title VII purposes, EEOC decision No. 85-4, Emp. Prac. Guide (CCH) p 6840, at 7040 (Mar. 18, 1985). The EEOC established the following standard for distinguishing between partners and employees: "In determining whether the individual is a partner or an employee in a particular case, the Commission will consider relevant factors including, but not limited to, the individual's ability to control and operate the business and to determine compensation and the administration of profits and losses." Id. at 7041 n. 4. In the performance of its statutory duty to investigate possible violations of the ADEA, the EEOC did not exceed its authority by issuing a subpoena duces tecum to an accounting firm claiming to be a partnership when "the information sought may be relevant to a legitimate purpose because it is possible [the firm] may label some of its members as 'partners' when, in fact, those members may not fit within the traditional definition of the term." E.E.O.C. v. Peat, Marwick, Mitchell & Co., 589 F.Supp. 534, 539 (E.D.Mo.1984), aff'd, 775 F.2d 928 (8th Cir.1985), cert. denied, --- U.S. ---, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986).
 
 
 14
 Rather than accept the obvious contractual employment relationship voluntarily entered into by Hyland and the corporation, the district court found that NHRA "amounts to a partnership" by applying an economic realities test originally developed by the courts to distinguish corporate employees from independent contractors. Spirides v. Reinhardt, 613 F.2d 826, 831 (D.C.Cir.1979) (Title VII case). The test entails consideration of numerous circumstances relating to the work relationship, with the most important factor being the extent of the employer's right to control the means and manner of the employee's performance. Id. A "hybrid" economic realities/right to control standard has been introduced to determine whether one claiming the benefits of the ADEA is an employee or an independent contractor. E.E.O.C. v. Zippo Manufacturing Co., 713 F.2d 32, 38 (3d Cir.1983); Hickey v. Arkla Industries, Inc., 699 F.2d 748, 752 (5th Cir.1983).
 
 
 15
 In only one reported case has the corporate form been disregarded in favor of a finding that the shareholders were in fact partners under the economic realities test. Without further analysis, the court in E.E.O.C. v. Dowd & Dowd, Ltd., 736 F.2d 1177, 1178 (7th Cir.1984) (Title VII case) found that "[t]he role of a shareholder in a professional corporation is far more analogous to a partner in a partnership than it is to the shareholder of a general corporation," and that "[t]he economic reality of the professional corporation in Illinois is that the management, control and ownership of the corporation is much like the management, control and ownership of a partnership." We disagree with the Seventh Circuit and hold that the use of the corporate form precludes any examination designed to determine whether the entity is in fact a partnership.
 
 
 16
 While it is true, as contended by NHRA, that shareholders of certain professional and other types of corporations have many of the attributes of partners, it also is true that partnerships frequently are organized in the manner of corporations. Bellis v. United States, 417 U.S. 85, 93-94, 94 S.Ct. 2179, 2185-86, 40 L.Ed.2d 678 (1974). The fact that certain modern partnerships and corporations are practically indistinguishable in structure and operation, however, is no reason for ignoring a form of business organization freely chosen and established. Concededly, the physician members of NHRA found that incorporation provided them with important tax advantages and employee benefits not available in any other type of business organization. Having made the election to incorporate, they should not now be heard to say that their corporation is "essentially a medical partnership among co-equal radiologists." Affidavit of Gerald Fishbone, M.D., in Support of Defendant's Motion for Summary Judgment at 5, para. 13 (Sept. 24, 1984).[5]
 
 
 17
 It is one thing to apply an economic realities test to distinguish an employee from an independent contractor or partner, but it is quite another to apply the test in an attempt to identify as partner one associated with a corporate enterprise. While those who own shares in a corporation may or may not be employees, they cannot under any circumstances be partners in the same enterprise because the roles are mutually exclusive. NHRA urges us to "develop a ... list of factors to be considered in determining if an individual is a 'partner' or a covered 'employee.' " There is no need to develop such a list of factors where the individual involved is a corporate employee, for we hold that every such employee is "covered" for purposes of the ADEA and that any inquiry respecting partnership status would be irrelevant.
 
 
 18
 The status of Dr. Hyland is clear--not only was he an officer, director and shareholder of NHRA, he also was specifically designated as an employee of the corporation in an employment agreement containing detailed provisions relating to the terms and conditions of his employment. There was nothing inconsistent between his proprietary interest (whether or not it was exactly equal to the interests of each of his associates) and the corporate employment relationship he held. An analysis of his status need proceed no further. His fellow shareholders, officers and directors in NHRA simply are precluded from expelling him from the corporation on the statutorily disapproved basis of age discrimination.
 
 
 19
 Accordingly, the judgment of the district court is reversed and the matter is remanded for further proceedings consistent with the foregoing.
 
 CARDAMONE, Circuit Judge, dissenting:
 
 20
 The majority today decides that once the corporate form is chosen for the avowed and conceded purpose of gaining tax advantages, the corporate entity is bound by that choice for all other purposes, including being subject to the anti-discrimination laws. Because NHRA chose to adopt the corporate form the majority holds that NHRA is bound by that choice and, appellant Hyland, merely because he worked for that corporation must be classified as an employee when a court applies the ADEA. Because I disagree with both of these contentions, I respectfully dissent.
 
 
 21
 First, we are not obliged to adopt a take-it-or-leave-it attitude toward the status of NHRA and hold that once a corporation, then always a corporation. The manner in which a corporation functions determines what kind of entity it is for purposes of the discrimination laws. Neither labels, nor titles dictate the answer. Second, regardless of the talismanic words used to characterize the actual manner in which NHRA functioned--corporation or partnership--the ADEA does not mandate that everyone who works for a corporation must be an employee within the Act, as the majority believes. The label that characterizes the substance of an entity does not necessarily determine the employment status of all those who work within it. The only hard and fast rule is that there should be no hard and fast rule to determine an individual's employee status for purposes of coverage within the anti-discrimination provisions of the ADEA. Case by case determinations best fulfill that Act's purposes. Hence, the status of the entity Hyland was associated with and his status within that entity must be analyzed in order to determine whether he was an employee covered by the ADEA.
 
 I STATUS OF ENTITY
 
 22
 The district court made a finding that NHRA should realistically be characterized as a partnership rather than a professional corporation, since the "structure of defendant's business is an equal division of ownership and management, and the equal sharing of profits and losses among the members, are all hallmarks of partnership status." I agree.
 
 
 23
 Appellant counters this conclusion by citing cases where courts evinced a general refusal to look beyond the corporate form, once the members of that entity made that choice. Yet, even in the context of an adjudication of tax liability, the Supreme Court has recognized the need to look at the substance of a transaction when the purposes behind an applicable statute have been subverted.
 
 
 24
 The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose.
 
 
 25
 Gregory v. Helvering, 293 U.S. 465, 470, 55 S.Ct. 266, 268, 79 L.Ed. 596 (1935).
 
 
 26
 In the present case, substance should also take precedence over form, not because "corporation" and "partnership" are ambiguous terms, but because the Act's broad definition of employee leaves the individual's status to be determined in each case irrespective of the form chosen to conduct business or the labels attached to an individual. This proposition finds ample support in the decisions. See, e.g., E.E.O.C. v. Dowd & Dowd, Ltd., 736 F.2d 1177, 1178 (7th Cir.), reh'g and reh'g en banc denied (1984) (role of an attorney shareholder in attorneys professional corporation more analogous to a partner than corporate shareholder. The reality of the situation, i.e., management, control, and ownership closely resembled a partnership and these realities control, not the corporate label under which the entity operated); Armbruster v. Quinn, 711 F.2d 1332, 1340 (6th Cir.), reh'g denied, (1983) (while parties' view of relationship is evidence of whether one is an employee, it is not determinative; the economic reality of the relationship is examined); Spirides v. Reinhardt, 613 F.2d 826, 829, 832 (D.C.Cir.1979) (in applying the statutory language and legislative history of Title VII mere fact that contracting parties label an individual an independent contractor does not bind a court when an examination of the substance of that relationship dictates otherwise).
 
 
 27
 Examining the economic and structural realities of NHRA for purposes of applying the ADEA, the district court correctly found that the organization established by the original founding doctors more closely resembles a partnership than a corporation. This conclusion necessarily follows from a consideration of the distinctions between the two forms. Section 6 of The Uniform Partnership Act defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Partners traditionally manage and control the business and share in the profits and losses. "A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is a community of interest in the profits and losses." Commissioner v. Tower, 327 U.S. 280, 286, 66 S.Ct. 532, 535, 90 L.Ed. 670 (1946). Moreover, shareholders in a professional corporation rarely achieve the total limitation of personal liability enjoyed by owners of a corporation, and are subject to liability for malpractice. See Dowd & Dowd, Ltd., 736 F.2d at 1178-79.
 
 
 28
 Further support for concluding that NHRA was a partnership is found in the fact that each founding member contributed an equal amount of capital and agreed to be bound by the shareholders' agreement and by individual employment agreements. All shareholder members were required to and practiced the same specialty (radiology) and agreed to share a designated percentage of the profits and losses, as well as management responsibilities. All could withdraw at any time, turn in their stock and be paid according to an agreed method of valuation. While not all professional corporations are partnerships, NHRA's insistence on equality in vote, voice and profits for all member-shareholders, including those subsequently joining the practice, demonstrates, as the district court found, that structurally and economically the entity is best characterized as a partnership.
 
 II HYLAND'S STATUS
 A. No per se Rule Applies
 
 29
 Next, consideration should be given to Hyland's status within that partnership. It is tempting to adopt a rule that everyone who works for a corporation is an employee, and everyone labelled "partner" is a partner. Like life, the law is not that simple. In fact, decisional law makes plain that no per se rule has been adopted that includes all those working for a corporation as employees--regardless of the amount of their stock ownership, their lack of involvement in the day-to-day activities of the business, or their failure to perform additional employee duties. And, by the same token, no rule excludes high-level individual officers in corporations from being considered as employees for purposes of the ADEA. See, e.g., Zimmerman v. North American Signal Co., 704 F.2d 347, 351-52 & n. 4 (7th Cir.1983) (unpaid, inactive corporate officers or directors not characterized as employees; labels do not control as decisive issue is whether an employer-employee relationship exists rather than title held by worker); Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1300 (9th Cir.1982), cert. denied, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 838 (1984) (member-shareholders in family corporation, where each member owned an equal block of shares, classified as employees); E.E.O.C. v. First Catholic Slovak Ladies Ass'n, 694 F.2d 1068, 1070 (6th Cir.1982) (coverage under ADEA should not center on labels the organization gives a position).
 
 B. Legislative History
 
 30
 The question is what definition should be used to determine whether Hyland is an employee or a traditional partner of NHRA. The first place to look is the statute. The Act's inconclusive definition--an individual employed by any employer--is of no help. While the legislative history is sparse, it does reveal Congress' aim to permit classification of professionals--for example, professors, doctors, and lawyers--as employees. One of the 1972 amendments to Title VII extended its coverage to academic institutions. 42 U.S.C. Sec. 2000e-1 (1982). Further, Congress considered but did not include a proposal that physicians be excluded from Title VII's protection. 118 Cong.Rec. 3802 (1972) (Statement of Senator Javits).
 
 
 31
 There can be no doubt that it was Congress' purpose to prohibit employment discrimination against "any individual" in an employment relationship of the type defined in the Act. Fairleigh Dickinson University, 646 F.2d at 828; 29 U.S.C. Sec. 623(a); see also 29 U.S.C. Sec. 621 (statement of findings and purpose). Title VII's legislative history indicates that the term "employer" was intended to have "its common dictionary meaning, except as expressly qualified by the Act." 110 Cong.Rec. 7216 (April 8, 1964). It would seem to follow that the same common, dictionary meaning should be used when defining the term "employee" because "legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." Addison v. Holly Hill Co., 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944).
 
 C. Partnership Under the ADEA
 
 32
 Those cases that consider an individual's status in a partnership setting are particularly relevant. They support the view that those labelled "partners" do not always fall within the traditional definition of that term. When all the indicia of partnership status are not present, an individual is an employee within the purview of the ADEA--regardless of the label attached to his position. Such an approach best fulfills the Act's remedial purposes.
 
 
 33
 The Supreme Court in Hishon v. King & Spalding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), held that a law partnership's decision to deny admittance of a female associate/employee into the partnership was covered by the provisions of Title VII. In a concurring opinion, Justice Powell wrote to express his view that the Court's decision did not apply to the relationship among already existing partners, who cannot be characterized as employees. Id. at 2236. The concurring justice added "[o]f course, an employer may not evade the strictures of Title VII simply by labelling its employees as 'partners.' " Id. at 2236 n. 2.
 
 
 34
 The Equal Employment Opportunity Commission ("EEOC"), the agency charged with the interpretation and enforcement of both Title VII and the ADEA, has adopted a similar position. In E.E.O.C. Decision No. 85-4, CCH Emp.Prac.Rptr. p 6845, at 7040 (March 18, 1985), the Commission found that partners in an eight-member law firm could not be classified as employees for purposes of Title VII. Examining a number of factors, the Commission was influenced by the fact that all the partners controlled and managed the operation of the business, each partner had an equal voice in the management and direction of the firm, and all profits and losses were shared according to designated percentages outlined in the partnership agreement. Id. at 7040. But the Commission recognized that, in some cases, an individual who is called a partner may be characterized as an employee. "In determining whether the individual is a partner or an employee in a particular case, the Commission will consider relevant factors including, but not limited to, the individual's ability to control and operate the business and to determine compensation and the administration of profits and losses." Id. at 7041 n. 4.
 
 
 35
 The Commission's view received judicial support in E.E.O.C. v. Peat, Marwick, Mitchell and Co., 589 F.Supp. 534 (E.D.Mo.1984), aff'd, 775 F.2d 928 (8th Cir.1985), when it sought to compel the accounting firm's compliance with a records subpoena relating to an investigation of its mandatory retirement policies. Peat, Marwick argued that the subpoena issued by the EEOC was not reasonably related to any purpose of the ADEA since it sought information concerning possible discrimination against partners, and partners in an accounting firm are not employees protected by the provisions of the Act. The court upheld enforcement of the subpoena and agreed with the EEOC that respondents may label some of its members as "partners", when in reality those members may not fit within the traditional definition of the term. 589 F.Supp. at 538.
 
 
 36
 D. Factors Appropriate for Testing the Status of Persons
 
 Associated with a Partnership Under ADEA
 
 37
 Although the right to control/economic realities test is appropriate, for example, to test whether a person is an independent contractor or an employee, the majority correctly observes that this classic hybrid test is inappropriate in a partnership setting. Some of the factors, for example, skill required, equipment furnished and place of work, length of time worked are not relevant inquiries. Moreover, the focus is different when analyzing employment in a partnership setting since the question is the status of the individual within an organization of which he is concededly a part. By contrast, when testing whether someone is an independent contractor the question is not the individual's status within the entity, but rather whether the person is or is not a member of that entity.
 
 
 38
 When applying the ADEA a court must evaluate two factors in deciding whether a so-called partner in an entity best characterized as a partnership should be classified as a traditional partner or as an employee. Those two factors are compensation and control. The first is more accurately stated as whether profits and losses were shared according to a predetermined formula. Traditional partners need not share profits and losses equally; but unless each is paid a predetermined share of profits, the individuals are not actually carrying on the business as co-owners. In this case, the shareholders' agreement stipulated in advance for an equal division of profits and losses between the shareholder members and any subsequently admitted member.
 
 
 39
 Second, is the individual's control and responsibility vis-a-vis the other partners in the organization. Although all individuals need not have an equal voice, an individual whose voice in the management of a business is substantially less than the others is better classified as an employee since--unlike a traditional partner--he lacks a significant voice in the business' direction. An individual whose opinions and business judgment are drowned out by more powerful individuals is more susceptible to the discriminatory practices that the ADEA and Title VII were designed to eliminate. Here, Hyland had an equal right to operate and control New Haven Associates. No shareholder-member exercised any greater degree of control in the management of the business than he did. Concededly, the entity here is a small one; but size is not the test when analyzing control and responsibility. He was one of the original group of radiologists who founded a business that they could manage and profit by. They were employees in name only, and organized their entity as a corporation only to the extent that the tax laws required them to do so.
 
 
 40
 This original group therefore considered themselves as founders and owners, not employees. After examining Hyland's compensation and control, it is evident that he was in fact a traditional partner, and not an employee.
 
 III CONCLUSION
 
 41
 Therefore, NHRA should be immune from liability for discriminating against him on the basis of age. For the majority now to treat Hyland and his co-partners as employees places a premium on devising a simplistic rule easy to apply, but one that ignores the reality of the entity's and the individual's status. Accordingly, I vote to affirm the order granting summary judgment in favor of NHRA and that dismissed appellant's complaint.
 
 
 
 [1]
 By decision of Magistrate Smith dated January 12, 1983, adopted and approved by Judge Daly on February 4, 1983, pendent state claims of breach of contract, wrongful discharge and intentional infliction of emotional distress were dismissed. The same pendent claims, reasserted in the amended complaint, were dismissed by Judge Dorsey in an order dated January 23, 1984, which also dismissed the ADEA claim as against the individual defendants. No appeal is taken from any of these rulings
 
 
 [2]
 The stockholders' agreement referred to consists of an original agreement dated October 3, 1972 and a "First Amendment" to the agreement dated February 3, 1976
 
 
 [3]
 The original shareholders were Drs. Robert Shapiro, Solomon Schwartz, Wayne Whitcomb, Gerald Fishbone and John Hyland. It appears that Dr. Whitcomb is now deceased
 
 
 [4]
 The discrimination complained of must be suffered by one between the ages of 40 and 70. 29 U.S.C. Sec. 631(a)
 
 
 [5]
 Dr. Fishbone, who has served as vice-president, treasurer and director of NHRA, attempts to secure the "best of both possible worlds" by alleging that the "choice, in 1972, to employ a corporate form was made for sound business and financial reasons but has not affected the conduct of our affairs as equal partners in this medical practice." Affidavit of Gerald Fishbone, M.D., at 5, para. 14