Deborah Anne WELLS, Plaintiff–
Appellant,

v.

CLACKAMAS GASTROENTEROLOGY
ASSOCIATES, P.C., an Oregon Cor-
poration, Defendant–Appellee.

No. 00–35545.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2001

Filed Nov. 26, 2001

Craig A. Crispin, Portland, Oregon, for
the plaintiff-appellant.

Steven W. Seymour, Samuels Yoelin
Kantor Seymour & Spinrad LLP, Port-
land, Oregon, for the defendant-appellee.

Before: THOMPSON, TASHIMA, and
GRABER, Circuit Judges.

Opinion by Judge TASHIMA; Dissent
by Judge GRABER.

TASHIMA, Circuit Judge:

Plaintiff–Appellant Deborah Anne Wells
appeals from the order of the district court
granting summary judgment in favor of
Defendant–Appellee Clackamas Gastroen-
terology Associates, P.C. (Clackamas) on
her claim under the Americans With Dis-
abilities Act of 1990 (ADA). The district
court held that Clackamas was not an "em-
ployer," and therefore not a "covered enti-
ty," within the meaning of the ADA be-
cause it did not have 15 or more employees
during the relevant time periods. We
must decide whether Clackamas' physi-
cian-shareholders were "employees" within
the meaning of the ADA. We have jurisdic-
tion pursuant to 28 U.S.C. § 1291, and we
reverse.

## I. BACKGROUND

Wells was an employee of Clackamas, an
Oregon professional corporation, from
1986 until her termination in May 1997.
During the relevant time period, four phy-

sician-shareholders, all of whom participated in the management and operations of the medical practice, were the shareholders and directors of Clackamas. In addition to the physician-shareholders, 12–15 other persons were employed by Clackamas during this time period.

When Clackamas terminated Wells' employment, she brought an action against Clackmas alleging unlawful discrimination on the basis of disability under Title I of the ADA, 42 U.S.C. §§ 12101–12117, and Or.Rev.Stat. §§ 659.436–659.449. She also brought a claim for common law wrongful discharge.

Clackamas moved for summary judgment against Wells' ADA claim, arguing that it was not an "employer" and, consequently, not a "covered entity," within the meaning of the ADA because it did not have 15 or more employees for the 20 weeks required by the statute. It is undisputed that if Clackamas' physician-shareholders are not counted as "employees," then it would have had too few employees to qualify as an "employer." On the other hand, if the physician-shareholders are counted as "employees," then the number of employees would have exceeded the number required to bring Clackamas under the coverage of the ADA. Relying on the "economic realities" test, Clackamas argued that its four physician-shareholders should be regarded as "partners" and not as "employees" within the meaning of 42 U.S.C. § 12111(4) & (5).

The magistrate judge accepted Clackamas' argument and recommended that the court grant the motion for summary judgment on the ADA claim and decline to exercise supplemental jurisdiction over the remaining claims. The district court accepted the recommendations of the magistrate judge in their entirety and entered judgment dismissing the action. Wells timely appeals.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo and must determine whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

## III. DISCUSSION

Whether shareholders of a professional corporation who are actively engaged in conducting the business of the corporation are "employees" under the ADA is an issue of first impression in this Circuit. Under the ADA, it is unlawful for a "covered entity" to discriminate against a qualified individual with a disability on the basis of that disability. 42 U.S.C. § 12112(a). The term "covered entity" includes an "employer." *Id.* § 12111(2). An "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." *Id.* § 12111(5)(A). An "employee" is defined as "an individual employed by an employer." *Id.* § 12111(4).

No circuit has interpreted these specific provisions of the ADA. There are, however, a number of cases that interpret nearly identical language in other federal employment discrimination statutes, including Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. These same cases also state that their interpretations should apply to all employment discrimination statutes. *See e.g., Serapion v. Martinez,* 119 F.3d 982, 985 (1st Cir.1997) ("We regard Title VII, ADEA, ERISA, and FLSA as standing in

pari passu and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another."); *Hyland v. New Haven Radiology Assocs., P.C.,* 794 F.2d 793, 796 (2d Cir.1986) (holding that for the FLSA, Title VII, and the ADEA, "cases construing the definitional provisions of one are persuasive authority when interpreting the others").

In *EEOC v. Dowd & Dowd, Ltd.,* 736 F.2d 1177 (7th Cir.1984), the Seventh Circuit applied an "economic realities" test and concluded that "a shareholder in a professional corporation is far more analogous to a partner in a partnership than it is to the shareholder of a general corporation." *Id.* at 1178. On this basis, the court concluded that because they are "really" partners, shareholders in professional corporations are not to be counted as employees for purposes of federal employment discrimination law. *Id.*

This approach was rejected by the Second Circuit in *Hyland.* In *Hyland,* the court held that the use of the corporate form, including a professional corporation, "precludes any examination designed to determine whether the entity is in fact a partnership." 794 F.2d at 798. The incorporators of a professional corporation make a deliberate decision to adopt the corporate form for their business in order to avail themselves of important tax, employee benefit, and civil liability advantages. *Id.* Having freely made the choice to adopt this form of business organization "they should not now be heard" to say that their firm is "essentially a medical partnership," and not a corporation. *Id.*

Given the broad purpose of the ADA, *see* 42 U.S.C. § 12101, we find *Hyland*'s reasoning to be considerably more persuasive than *Dowd*'s. Because the decision to incorporate is presumably a voluntary one, there is no reason to permit a professional

corporation to secure the "best of both possible worlds" by allowing it both to assert its corporate status in order to reap the tax and civil liability advantages and to argue that it is like a partnership in order to avoid liability for unlawful employment discrimination. Therefore, following the Second Circuit's reasoning in *Hyland,* we hold that Clackamas' shareholder-employees should be counted as "employees" under the ADA and "that any inquiry respecting partnership status [is] irrelevant." *Hyland,* 794 F.2d at 798.

Clackamas contends that *Strother v. Southern California Permanente Medical Group,* 79 F.3d 859 (9th Cir.1996), directs the court to use the "economic realities test" in this case. *Strother,* however, is distinguishable from this case and does not address the split between *Dowd* and *Hyland* regarding the status of shareholders of a professional corporation. In *Strother,* a case arising under state law, we held that partners can, under appropriate circumstances, be deemed to be employees for the purposes of the employment discrimination laws.

It is one thing to apply an "economic realities" test to determine that a nominal partner should, under appropriate circumstances, be considered an "employee" in order to prevent a firm from labeling the bulk of its employees as partners simply to insulate itself from liability for discrimination. It is quite another thing, however, to apply the "economic realities" test in order to classify shareholder-employees of a corporate enterprise as partners. *See Hyland,* 794 F.2d at 798. While the shareholders of a corporation may or may not be "employees," they can never be partners in that corporation because the roles are "mutually exclusive." *Id.*

In the case at bench, the status of Clackamas' four physician-shareholders as employees is clear. During the relevant time

periods, in addition to being shareholders and directors of Clackamas, the four physician-shareholders actively participated in the management and operation of the medical practice and literally were employees of the corporation under employment agreements. Therefore, the physician-shareholders of Clackamas should be regarded as "employees" within the meaning of 42 U.S.C. § 12111(4) & (5); consequently, Clackamas had a sufficient number of employees to qualify as an "employer" and as a "covered entity" under the statute.

## IV. CONCLUSION

Because we conclude that Clackamas' physician-shareholders are employees of the corporation, not partners in it, the district court's grant of summary judgment in favor of Clackamas is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

GRABER, Circuit Judge, dissenting:

I respectfully dissent. For three reasons, *EEOC v. Dowd & Dowd, Ltd.*, 736 F.2d 1177 (7th Cir.1984), expresses the more persuasive approach in the context of this case:[1] (1) our circuit has cautioned against being governed by labels, rather than realities; (2) a physicians' professional corporation in Oregon has many attributes of a partnership as a matter of law and is not merely an ordinary commercial corporation; and (3) the purpose of the numerical requirement in the ADA is to separate small from large enterprises, not to adhere to the vagaries of tax law or tort liability. Like the district court, I would apply the "economic realities" test and would conclude that Defendant's physician-

shareholders were not "employees" within the meaning of the ADA.

### 1. *The Significance of* Strother

In *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865–68 (9th Cir.1996), we held that "partners" can be considered "employees" under a state anti-discrimination statute that borrowed concepts from federal law. There, a partner in a medical partnership consisting of more than 2,000 partners had sued the medical partnership. The district court held that the plaintiff could not maintain the action because she was a partner in the defendant entity and was a party to its partnership agreement. We reversed, holding that the plaintiff should have an opportunity to prove that she was functionally an employee (for example, had neither the power nor the duty to participate in the management and the control of the defendant firm), rather than a partner in the normal sense. *Id.* at 867–68. We noted, for example, that the defendant entity was controlled by a board of directors over which the plaintiff exercised "little control and to which she [had] limited access." *Id.* at 867.

Although I agree that *Strothers* is not controlling here, it at least suggests that economic realities are more important than labels. That principle should remain true when the shoe is on the defendant's foot.

Indeed, even the Second Circuit has backed away a bit from the bright-line test suggested by *Hyland v. New Haven Radiology Assocs., P.C.*, 794 F.2d 793 (2d Cir.1986). In a later case, the Second Circuit observed that, although the shareholders of a professional corporation can-

---

**1.** The other circuits that have examined this question have followed the Seventh Circuit's approach in *Dowd: Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 80–81 (8th Cir.

1996); *Fountain v. Metcalf, Zima & Co., P.A.*, 925 F.2d 1398, 1400–01 (11th Cir.1991). It appears that no circuit other than the Second has adopted the *Hyland* approach.

not be considered partners, it does not follow that every such shareholder also is an "employee" of the professional corporation. *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1538 (2d Cir.1996). For example, if a shareholder sits on the board of directors but is not involved in the day-to-day management or operation of the firm, then the shareholder is more akin to an "employer," rather than being an "employee." *Id.* This case brought the Second Circuit's approach somewhat closer to the Seventh Circuit's. *See Chavero v. Local 241*, 787 F.2d 1154, 1157 (7th Cir.1986) (holding that members of the board of directors are not employees unless they "perform traditional employee duties"); *Zimmerman v. N. Am. Signal Co.*, 704 F.2d 347, 352 (7th Cir.1983) (holding that directors and "unpaid, inactive officers" are not corporate "employees"). In other words, "economic realities" play some role even in the Second Circuit, and *Strother* counsels that economic realities should play a major role in the Ninth Circuit.

## 2. The Nature of This Professional Corporation

A professional corporation has some attributes of an ordinary incorporated business, but it is not identical and retains attributes of a professional partnership. The use of the word "corporation" in both contexts should not constrain our inquiry.

In Oregon, a physicians' professional corporation, like this one, preserves the professional relationship between the physicians and their patients, as well as the standards of conduct that the medical profession requires. Or.Rev.Stat. § 58.185(2). Further, "*a shareholder of the corporation is personally liable as if the shareholder were rendering the service or services as an individual*" with respect to all claims of negligence, wrongful acts or omissions, or misconduct committed in the rendering of professional services. Or.Rev.Stat. § 58.185(3) (emphasis added). A licensed professional also is *jointly and severally liable* for such claims, albeit with some dollar limitations. Or.Rev.Stat. § 58.185(4)-(9). Ordinary business corporation rules apply only to other aspects of the entity, apart from the provision of professional services. Or.Rev.Stat. § 58.185(11). A professional corporation's activities must remain consistent with the requirements of the type of license in question, Or.Rev.Stat. § 58.205, and it may merge only with other professional corporations, Or.Rev.Stat. § 58.196, so the provision of professional services—with its attendant liabilities—must remain at the heart of a P.C. like this defendant.[2]

Additional special rules apply to professional corporations that are organized to practice medicine, none of which apply to ordinary business corporations. A majori-

---

**2.** In Oregon, the distinction between partnerships of professionals and professional corporations is diminishing further. Oregon is currently phasing in a new set of statutes that will govern all Oregon partnerships after January 1, 2003. 1997 Or. Laws, ch. 775, § 84. Under Or.Rev.Stat. § 67.105(4), the liability of partners in a limited liability partnership of professionals will be governed by professional-corporation law:

Notwithstanding subsection (3) of this section, the partners of a limited liability partnership who are professionals shall be personally liable in their capacity as partners

to the same extent and in the same manner as provided for shareholders of a domestic professional corporation under ORS 58.185 and 58.187 and as otherwise provided in this chapter.

The fact that the law governing business entities is subject to a change that will result in having two differently named business structures share significant common features (as well as the fact that the law of business organizations varies from state to state) is an additional reason to adopt an "economic realities" test instead of one that relies solely on labels.

ty of the directors, the holders of the majority of shares, and all officers except the secretary and treasurer must be Oregon-licensed physicians. Or.Rev.Stat. § 58.375(1)(a)-(c). The Board of Medical Examiners is given express statutory authority to require more than a majority of shares, and more than a majority of director positions, to be held by Oregon-licensed physicians. Or.Rev.Stat. § 58.375(1)(d) & (e). The Board of Medical Examiners also may *restrict the corporate powers* of a professional corporation organized for the purpose of practicing medicine, beyond the restrictions imposed on ordinary business corporations. Or. Rev.Stat. § 58.379. Lastly, Or.Rev.Stat. §§ 58.375 through 58.389 contain impediments to the transfer of shares and other corporate activities.

In short, even without considering the economic realities of this *particular* P.C., it is apparent that a physicians' professional corporation in Oregon retains important legal aspects of a partnership. On this record, it also is clear that the four physician-shareholders are the Defendant entity's directors, participate in the management and operation of the entity's medical practice, attend monthly management meetings, and share profits from the professional corporation through an annual bonus system. Because they in fact exercised full control over the medical practice, shared profits, and remained jointly and severally liable to patients on medically related claims, the physician-shareholders should be classified as partners, rather than employees.

### 3. The Reason for the ADA Classification

The apparent reason for limiting the ADA's coverage to entities with 15 or more employees in each of 20 or more calendar weeks in the current or preceding calendar year, 42 U.S.C. § 12111(5)(A), is to divide larger businesses from smaller ones. Congress decided "to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail." *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940 (7th Cir.) (discussing the congressional purpose "of exempting tiny employers from the antidiscrimination laws," including the ADA), *cert. denied*, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 408 (1999); *see also Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993) (recognizing that Congress exempted small employers from the ADEA and Title VII of the Civil Rights Act in order to protect them from "the costs associated with litigating discrimination claims").[3]

The result of the majority's opinion is that Clinic # 1, this defendant, is a "covered entity" for ADA purposes, while Clinic # 2 next door, which is identical in all respects except in its four physicians' decision not to adopt a P.C. format, is not a covered entity. Because the very purpose of the 15–employee threshold is economic, it makes no sense to treat Clinic # 1 and Clinic # 2 differently.

### 4. Conclusion

In my view, the Ninth Circuit should adopt the majority rule—an "economic realities" test—to determine whether a shareholder in a professional corporation is an "employee" within the meaning of the ADA. As Plaintiff and the panel majority acknowledge, if we applied that test to this

---

**3.** Additionally, Congress made a judgment about how large a business has a presumed effect on interstate commerce.

case we would have to affirm the judgment of the district court. I therefore dissent from the decision to reverse and remand.