Catherine McGRATH, Plaintiff,

v.

The PERMANENTE MEDICAL GROUP, Defendant.

No. C–79–0391 SC.

United States District Court, N. D. California.

Oct. 19, 1979.

Catherine McGrath, in pro. per.

William F. Hoefs, Thelen, Merrin, Johnson & Bridges, San Francisco, Cal., for Kaiser.

Garry, Dreyfus, McTernan, Brotsky, Stender, Herndon & Walsh, Inc., San Francisco, Cal., for California Association for Medical Laboratory Technology/Engineers & Scientists of California.

## MEMORANDUM DECISION

CONTI, District Judge.

Plaintiff brought this action on February 27, 1979 alleging employment discrimination under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* In an order dated September 7, 1979, this court permitted plaintiff to amend her complaint, adding nine new causes of action and a new defendant, the union to which she belonged. The matter is now before the court on defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff was employed as a medical technologist at Kaiser Hospital from March, 1972 to August, 1976. She alleges that because of her race and sex she was prevented from working in the culture and mycology rotations, which had the highest prestige and were reputed to be the most satisfying. Plaintiff also claims that she was entitled to educational leave by the terms of her employment contract, but that defendant denied permission in retaliation for her protests of defendant's discriminatory conduct. Finally, plaintiff contends that she was unjustly terminated as a continuation of the retaliatory denial of educational leave.

## II. SUMMARY JUDGMENT

Under *F.R.Civ.P. 56(b)*, a party against whom a claim is asserted may, at any time, move for a summary judgment in his favor as to all or any part thereof. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and the accompanying affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *F.R.Civ.P. 56(c).*

The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of material fact. It is not the function of the trial court at the summary judgment hearing to resolve any genuine factual issue, including credibility; and for purposes of ruling on the motion, all factual inferences are to be taken against the moving party and in favor of the opposing party. Discretion plays no real role in the granting of summary judgment. *See 6 Moore's Federal Practice* ¶ 56.15[8], at 56–642–643.

Plaintiff's complaint can be broken up into two main components. After a careful examination of each, the court must conclude that there is no issue of material fact left to be resolved and that plaintiff, as a matter of law, has no right to relief. Summary judgment is therefore proper.

## III. PLAINTIFF'S ALLEGATIONS—TITLE VII

### A. JOB ROTATION

As noted, plaintiff maintains that because of her race and sex, she was prevented from working in the culture and mycology rotations. Plaintiff allegedly suffered damage from this discrimination since (1) her professional qualifications remained static; (2) she was subjected to more onerous working conditions; (3) her ability to secure subsequent employment was impaired; and (4) she was subjected to constant humiliation on the job, which caused her great mental distress. Consequently, plaintiff seeks an award of damages for lost pay and other employment benefits, general

and punitive damages, and damages for emotional distress.

The court concludes that it is not necessary to reach the merits of plaintiff's Title VII claim that she was the subject of discrimination since she was not permitted to rotate through all of the job assignments. Before explaining the basis for this conclusion, a brief summary of the facts is in order.

During the month of June, 1976, plaintiff, on her own initiative, split her time between working in miscellaneous serology and cultures. *Plaintiff's Deposition* at 174, 176. Plaintiff's vacation was scheduled for the period of July 12, 1976 through August 2, 1976. Defendant told plaintiff that she could begin working in cultures in August. *Plaintiff's Deposition* at 156–57, lines 14–5. According to prepared assignment sheets, plaintiff was to work in cultures beginning August 2, 1976, the day she returned from vacation. Plaintiff's attorney affirmed that fact during oral argument before the court.

On June 18, 1976, plaintiff submitted a request for educational leave for the period of July 26, 1976 to August 20, 1976 for the purpose of attending a course given by the Center for Disease Control (hereinafter CDC) in Atlanta, Georgia. As will be seen, plaintiff never received permission to attend the course, but left anyway. She was terminated on August 10, 1976 when she failed to appear for work as ordered.

On the basis of these facts, the court finds that it need not address the issue of whether plaintiff had been the subject of discrimination prior to leaving for vacation in July, 1976. Plaintiff had already received training in cultures throughout the month of June so that she was prepared to work as a regular cultures technologist when she returned from vacation. *Plaintiff's Deposition* at 250, lines 19–21. Had she been present at work on August 2, 1976, all of her previous complaints regarding the job rotation would have become moot because on that date she would have begun working as one of the regular technologists in the requested rotation. She cannot be heard to complain now about discrimination and lack of training after she has been a precipitating factor in her failure to receive the job training that she desired.[1] Moreover, for that same reason, she cannot recover any damages allegedly suffered because of defendant's failure to permit her to rotate through the various job assignments and her corresponding lack of training.[2]

## B. EDUCATIONAL LEAVE

Plaintiff also maintains that in retaliation for her complaints, defendant discriminatorily refused to permit her to take the educational leave to which she was entitled, and that as a further act of retaliation, she was terminated when she exercised her legal right. The court does not agree.

In order to make out a prima facie retaliatory discharge case under Title VII, plaintiff must show:

(1) that she engaged in protected activity, i.e., that she opposed unlawful employment practices or participated in Title VII proceedings, (2) that her employer was aware of the protected activities, (3) that she was subsequently discharged, and (absent other evidence tending to establish a retaliatory motivation) (4) that her discharge followed her protected activities within such a period of time that the court can infer retaliatory moti-

---

**1.** The court is aware that plaintiff had been slated, on an earlier occasion, to work in cultures, and had been removed from the rotation because of conflicting vacation schedules. Thus, plaintiff could argue that there was no guarantee that she would have received the training she requested, even if she had appeared on August 2, 1976, as required. Had plaintiff shown up for work on August 2, 1976, and defendant denied training her, then the case would have taken on an entirely different complexion. But that is not the situation presented here. By wilfully making herself unavailable, plaintiff removed defendant's opportunity to train her as requested. Plaintiff, therefore, cannot complain about lack of training since she did not stand ready and willing to receive the desired training.

**2.** *See* Section IV, *infra.*

vation. Once the prima facie case has been demonstrated, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. If a reasonable basis for the discharge is shown, the employee then has the opportunity to demonstrate by evidence that the reasons assigned by the employer were pretexts. *Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779, 781 (9th Cir. 1976); *Hochstadt v. Worcester Foundation*, 425 F.Supp. 318, 324 (D.Mass.1976), *aff'd*, 545 F.2d 222 (1st Cir. 1976).

On the basis of the above, plaintiff has spelled out a prima facie case. Plaintiff protested her treatment at various times and to different people and complained to her superiors of racial discrimination on at least two occasions. *Plaintiff's Deposition* at 225–26, lines 5–12. Furthermore, she was fired less than a week after complaining to Ms. Weber about defendant's alleged discriminatory conduct in refusing to permit her to take educational leave. Items 1 through 4 are therefore satisfied.

The record before the court, however, shows that defendant has more than adequately borne its burden to articulate a legitimate, non-discriminatory reason for the discharge. At the meeting scheduled for May 20, 1976 by Jay Narayan, laboratory manager, plaintiff mentioned to defendant that she was considering applying for a CDC course given in Atlanta, Georgia. Ms. Weber, assistant laboratory manager, told plaintiff that she (plaintiff) should apply to see if she might be accepted. *Plaintiff's Deposition* at 157, lines 8–25. At the time of the meeting, plaintiff thought that the course was going to take place during the period covered by the vacation (July 12, 1976 through August 2, 1976) she had requested on April 21, 1976. *Plaintiff's Deposition* at 170, lines 4–6. She told them that she could cancel her vacation and transfer the time to educational leave time so that she could attend the course. Plaintiff was mistaken since the course was not to begin until July 26, 1976, so that only one week of the course was covered by her vacation.

Realizing her mistake, plaintiff, on June 18, 1976, submitted an educational leave request for the period July 26, 1976 to August 20, 1976 (Defendant's Exhibit # 5). The request was denied on that same day by Mr. Narayan because of prior commitments to other employees in the department and because two full-time technologists were terminating. Plaintiff admitted that two technologists, Nancy Fisher and Roger Saunders, were leaving. *Plaintiff's Deposition* at 190, lines 16–20.

During the last week of June, plaintiff spoke to Mr. Narayan about her educational leave. At that time, she mentioned a possible replacement for her while she was away. Mr. Narayan apologized for the inconvenience, but refused to permit the leave. *Plaintiff's Deposition* at 188–91, lines 18–24. On July 9, 1976, plaintiff again broached the subject of educational leave with Mr. Narayan who promised that he would discuss the matter with Ms. Weber. *Plaintiff's Deposition* at 192–94, lines 25–28. Plaintiff never received word from Mr. Narayan, nor did she attempt to contact anyone at the hospital. *Plaintiff's Deposition* at 203, lines 9–24. Instead, she left for Atlanta without formal approval of her educational leave. *Plaintiff's Deposition* at 206, lines 19–21. Apparently, plaintiff was in hopes that once defendant found that she was in Atlanta, it would acquiesce and grant the approval. *Plaintiff's Deposition* at 212, lines 1–6.

While in Atlanta, plaintiff sent a letter dated July 27, 1976 informing defendant that she was in Georgia and requesting that her pay checks be sent to her (Defendant's Exhibit # 7). On receipt of the letter, Mr. Narayan sent a mailgram on August 2, 1976 telling plaintiff that her educational leave request had been denied and that she was to call immediately (Defendant's Exhibit # 8). Plaintiff called defendant on August 4, 1976 and spoke to Ms. Weber, who told her that she had to return.

Plaintiff then wrote to Mr. Peterson, the hospital administrator, requesting permission to finish the course (Defendant's Exhibit # 9). She never received a response,

but received another mailgram from Mr. Narayan dated August 4, 1976 (Defendant's Exhibit # 10) informing her that if she did not appear at work on August 9, 1976, she would lose her job.[3] She sent another mailgram to Mr. Peterson (Defendant's Exhibit # 11) hoping that he would overrule Mr. Narayan. *Plaintiff's Deposition* at 228, lines 20–22. Instead, she received a mailgram from Mr. Narayan dated August 10, 1976 informing her of her termination as of that date (Defendant's Exhibit # 12).

Although a synopsis of the facts depicts a scenario of misunderstanding and confusion, it is clear, and uncontroverted, that plaintiff knowingly left on educational leave without permission and was terminated when she failed to appear at work when ordered, one week after she had been scheduled to return from vacation. What is more important, however, is that there is absolutely nothing in the facts presented, whether disputed or not, to indicate that plaintiff was denied educational leave for discriminatory or retaliatory reasons.[4] At the meeting during which plaintiff was encouraged to apply for the CDC course, she inadvertently led her superiors to believe that her vacation would cover the time of the course, so that there would be no scheduling conflict. *Plaintiff's Deposition* at 171–72, lines 19–25. When she requested educational leave to cover the course's time frame, it was denied because of prior vacation commitments to other laboratory employees and because of the two employee terminations. As noted, plaintiff was aware of the two people leaving.

Moreover, there is nothing prompting a conclusion that plaintiff was terminated for an improper reason. Plaintiff was absent from work without permission. Rather than terminating her on the date that she failed to return from vacation, defendant in good faith granted plaintiff a one week

extension. When she failed to appear on that date, her absence was taken as a voluntary termination.

The record is totally devoid of any evidence that indicates anyone in plaintiff's department was the subject of discrimination because of his or her race or sex. On the contrary, in an EEOC complaint, plaintiff admits that another white woman in her department had been rotated into cultures and mycology. In fact, in an effort to bolster her claim, plaintiff falsified a governmental form (Defendant's Exhibit # 19) saying that Ms. Thomas had referred to her on one occasion as a "white bitch." *Plaintiff's Deposition* at 259–61, lines 1–13. This indicates that plaintiff herself recognized that her discrimination claims lacked any substance.

Considering the above and the fact that plaintiff has failed to show that defendant's reasons for denying her educational leave or terminating her were merely pretextual, the court therefore grants defendant's Motion for Summary Judgment as it applies to plaintiff's Title VII claims. *See Miller v. Williams*, 590 F.2d 317, 320 (9th Cir. 1979).

## IV. PLAINTIFF'S ALLEGATIONS— BREACH OF UNION CONTRACT

In Count II, plaintiff alleges that defendant Kaiser reached a written collective bargaining agreement which it had with plaintiff's union. She claims defendant violated the terms of the agreement by: (1) failing to grant her a lateral transfer; (2) failing to equitably distribute work; (3) failing to grant paid educational leave; (4) discharging her unjustly; and (5) discriminating against her. In the course of examining plaintiff's Title VII claim, the court addressed each of these contentions, so it need not do so here. The court therefore grants defendant's Motion for Summary Judgment as it applies to plaintiff's claim that defend-

---

**3.** Plaintiff does not dispute the fact that she had enough time and money to return from Atlanta so that she would have been present for work on August 9, 1976. *Plaintiff's Deposition* at 228–30, lines 23–25.

**4.** Contrary to plaintiff's attorney's remarks during oral argument, it is clear to the court that plaintiff needed permission before taking educational leave. The collective bargaining agreement indicates this and plaintiff admitted as much during her deposition. *Plaintiff's Deposition* at 211, lines 14–19.

ant breached its collective bargaining agreement.

## V. PENDENT STATE CLAIMS

When a district court dismisses all federal claims prior to trial, it should not retain jurisdiction over pendent state claims. *Hodge v. Mountain States Tel. & Tel. Co.*, 555 F.2d 254, 261 (9th Cir. 1977) (and cases cited therein).

Accordingly, it is hereby ordered that defendant's Motion for Summary Judgment is granted and plaintiff's pendent state claims are dismissed without prejudice.