**Karen SUNSHINE, Plaintiff,**

v.

**LONG ISLAND UNIVERSITY, Defendant.**

**No. CV 93–3474.**

United States District Court, E.D. New York.

Sept. 2, 1994.

Vladeck, Waldman, Elias & Engelhard, P.C. by John A. Beranbaum, New York City, for plaintiff.

Long Island University by George S. Sutton, University Counsel, Brookville, NY, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Karen Sunshine ("Sunshine"), plaintiff in the above-referenced action, alleges that Long Island University ("defendant" or the "University"), her former employer, discriminated against her on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y.Executive Law § 296 *et seq.*, and the New York City Human Rights law, N.Y.Admin.Code § 8–101 *et seq.* (the "Administrative Law"). Presently before the Court is defendant's motion to dismiss on the ground that plaintiff failed to present her charges to the Equal Employment Opportunity Commission ("EEOC") and the State Division of Human Rights in a timely fashion. Defendant also seeks dismissal of plaintiff's retaliation claims on the

ground that plaintiff failed to allege a causal connection between the protected activity she allegedly engaged in, and the adverse employment action taken against her. Finally, defendant seeks dismissal of the Administrative Law claim. Plaintiff does not oppose this aspect of defendant's motion. For the reasons stated below, the Administrative Law claim is dismissed. The remainder of defendant's motion, however, is denied.

## I. BACKGROUND

The following facts, accepted as true for the purpose of this motion, are taken from plaintiff's complaint. Sunshine was employed as a member of the faculty of the University in its Political Science Department from 1978 until her discharge in August 1992. In 1987, the Political Science Department nominated plaintiff for tenure, but Academic Vice President Walter Jones ("Jones") caused her nomination to be denied. Sunshine thereafter filed a grievance through the faculty union asserting, among other things, that she had been discriminated against on the basis of her sex.

From 1988 through 1992, the Political Science Department nominated plaintiff for tenure, and each year the Dean of the College of Arts and Sciences and the Faculty Personnel Committee endorsed her nomination. However, each year Jones rejected her nomination. Jones also refused to promote Sunshine in 1991 to the position of Associate Professor despite the recommendation of her Department and the Faculty Personnel Committee.

In 1985 and 1986, Sunshine was repeatedly told by University administrators that she would be granted tenure once she obtained her Ph.D. Although she obtained her Ph.D. in 1987, Jones informed her that she would have to publish an article in order to get tenure. In 1990, after Sunshine had published an article, Jones told her that he still would not approve her nomination until she had additional publications.

In April 1992, after she had published another article and had a third article accepted for publication, Sunshine's nomination for tenure was once again presented to Jones, having been approved by the Political Sci-

ence Department, the Faculty Personnel Committee, and the Dean of the College of Arts and Sciences. Once again, Jones rejected Sunshine's nomination for tenure. This time, Jones also informed Sunshine that her employment was being terminated.

In 1992, the year that plaintiff's employment was terminated, twelve professors, including Sunshine, were recommended for tenure by their departments and the faculty. Five of the twelve were male and seven were female. All of the males, except one Hispanic, were granted tenure. Initially, none of the females was granted tenure. After a faculty protest, one of the females was granted tenure. Two of the females, including Sunshine were terminated.

Finally, Sunshine alleges that at a joint meeting of the Faculty Personnel Committee, the University Administration and the Board of Trustees, Jones made knowingly false and defamatory statements concerning Sunshine's qualifications as a scholar. Sunshine alleges, on information and belief, that the statements were made by Jones to obscure the discriminatory motive for his decision to deny Sunshine tenure and to terminate her employment and to punish her for the complaints of discrimination against women, and her complaints that she had been subjected to unlawful discrimination.

On November 2, 1992, plaintiff filed her charge of discrimination with the EEOC.

## II. DISCUSSION

■ Title VII requires, in this instance, that a charge of discrimination be filed with the EEOC within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e–5(e); Bennett v. New York City Dep't of Corrections, 705 F.Supp. 979, 982 (S.D.N.Y. 1989). A timely filing is a prerequisite for filing a federal civil action under Title VII. Absent a timely filing, a Title VII case must be dismissed. See Economu v. Borg–Warner, 829 F.2d 311, 315 (2d Cir.1987).

■ The period for filing a charge begins to run from the date the alleged unlawful employment practice occurred. See Delaware State College v. Ricks, 449 U.S. 250,

258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (The limitations period begins to run "at the time of the discriminatory act, not the point at which the consequences become painful.") Defendant argues that the Title. VII claim must be dismissed because plaintiff did not file her charge with the EEOC until April 1992 despite the fact that she was first denied tenure in 1987. Plaintiff responds that her April 1992 charge was well within 300 days from the most recent of defendant's allegedly discriminatory acts. Thus, plaintiff argues that the only question is whether the claims regarding defendant's pre–1992 conduct are timely. Moreover, plaintiff further argues that under the continuing violation doctrine the claims arising from defendant's pre–1992 conduct are also timely.

Under the continuing violation doctrine, where there is a continuous pattern or policy of discrimination, and where the plaintiff has filed her charge no later than 300 days after the last discriminatory act by defendant, the plaintiff may recover for earlier acts of discrimination as well. *See Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). To establish a continuing violation a plaintiff must allege either (1) " 'a series of related acts, one or more of which falls within the [limitations] period' " or (2) the " 'maintenance of a discriminatory system both before and during the [limitations] period.' " *Alcena v. Raine,* 692 F.Supp. 261, 270 (S.D.N.Y. 1988) (quoting *Valentino v. United States Postal Serv.,* 674 F.2d 56, 65 (D.C.Cir.1982)); *see also Adames v. Mitsubishi Bank Ltd.,* 751 F.Supp. 1565, 1575 (E.D.N.Y.1990).

Here, plaintiff has alleged both a series of related acts and a continuing policy of discrimination against women faculty members. To qualify as a series of related acts, the events, as alleged, must not be "isolated and sporadic outbreaks of discrimination," but a "dogged pattern." *Bruno v. Western Elec. Co.,* 829 F.2d 957, 961 (10th

Cir.1987) (quoting *Shehadeh v. Chesapeake & Potomac Tel. Co.,* 595 F.2d 711, 725 n. 73 (D.C.Cir.1978)). Plaintiff's complaint alleges that for six successive years, on a regular annual basis, she was denied tenure by the same individual despite having been recommended for tenure. This Court finds that allegations such as these are sufficient to trigger the continuing violation doctrine. *See Harris v. New York Times,* No. 90 Civ. 5235, 1993 WL 42773 at *11–13, (S.D.N.Y. Feb. 9, 1993) (1993 U.S.Dist. LEXIS 1534, at *26–33) (finding a continuing violation where the employer passed over or did not consider a black employee for several different promotions).

Defendant's reliance on *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and similar cases is misplaced. In *Ricks,* the plaintiff professor was denied tenure. He then filed an internal grievance challenging that denial. It was Delaware State's policy to offer one year terminal contracts to faculty who were denied tenure. The plaintiff in *Ricks* did not file his EEOC charge until the end of that one year term. The Supreme Court held that Rick's filing with the EEOC was beyond Title VII's limitations period, and that there was no showing of a continuing violation to cure the untimeliness. *Id.* at 257–58, 101 S.Ct. at 503–04.

The Court held that the only alleged act of discrimination was the final denial of tenure, an act occurring beyond the limitations period. The subsequent termination of employment was not a separate act of discrimination, but merely the "effects" of the previous denial of tenure decision, since such termination was a "delayed, but inevitable" consequence of tenure denial. *Id.*

In the instant case, the complaint alleges a number of discriminatory acts that took place within the limitations period. None of these acts was the "inevitable" consequence or the "effects" of prior University discriminatory conduct.[1] Hence, in contrast to *Ricks,* plain-

---

1. In 1987, after Sunshine's first tenure denial it was far from apparent that she would never be granted tenure and ultimately would be fired. To the contrary, after 1987, defendant repeatedly assured plaintiff that she would be granted tenure as well as a promotion so long as she received her Ph.D or had articles published. Additionally, it is apparent from the complaint, that

tiff has satisfied the continuing violation doctrine requirement that the last act of discrimination in a series of acts takes place during the limitations period.

Additionally, plaintiff has also successfully alleged that a continuing discriminatory system existed at the University during the limitations period. She alleges that at the time of her dismissal, 12 faculty members were recommended for tenure. Seven of those were women. Initially, none of the seven women were granted tenure, while four out of five male faculty members were granted tenure.[2] Moreover, plaintiff has also alleged that male faculty members were granted tenure although they had fewer publications than plaintiff.

Plaintiff's allegations demonstrate a continuing system of discrimination against female faculty by defendant sufficient to defeat defendant's motion to dismiss. *See Egelston v. State University College at Geneseo,* 535 F.2d 752, 755 (2d Cir.1976) (finding continuing violation where female professor alleged that her termination was part of the college's "continuing policy to deny women access to its upper echelon"). *See also Pfau v. Coopers & Lybrand,* 776 F.Supp. 744, 751 (S.D.N.Y.1990). Accordingly, under this arm of the continuing violation doctrine, plaintiff's EEOC charge is timely and her complaint not barred.

■ Defendant makes the same arguments against plaintiff's cause of action brought under the New York State Human Rights Law. Under New York law, a complaint of discrimination must be filed with the New York State Division of Human Rights "within one year after the alleged unlawful discriminatory practice." N.Y.Exec.Law § 297(5). A charge filed with the EEOC is deemed filed with the State Division. Absent a timely charge, a claim under the Human Rights Law must be dismissed.

Suffice it to say, that like the federal courts, New York courts recognize the continuing violation doctrine. *See McClary v. Marine Midland Bank,* 87 A.D.2d 982, 450 N.Y.S.2d 109, 110 (4th Dep't 1982). In fact,

the New York doctrine is apparently broader than the federal one inasmuch as it focuses on "whether the discriminatory practice had a continuing impact on the complainant." *Id.* Thus, like the Title VII claim, this Court finds that the state Human Rights claim is not barred by the statute of limitations.

■ Finally, defendant also argues that plaintiff's cause of action for retaliation must be dismissed. In order to state a claim for retaliation, plaintiff must allege that: (1) plaintiff opposed an employment practice that she believed to be unlawful or otherwise engaged in protected activity; (2) defendant knew of her opposition; (3) adverse employment action followed; and (4) a causal connection existed between the protected activity and the adverse employment action. *See Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1213 (2d Cir.1993).

■ A fair reading of the complaint reveals that plaintiff has alleged all the elements necessary to support a retaliation claim. She alleges that she filed a formal grievance, that there was a faculty protest with respect to defendant's tenure decisions and that in retaliation for that activity Jones terminated plaintiff and one other woman faculty member. Additionally, plaintiff also alleges that Jones made false and defamatory statements regarding plaintiff's scholarship in retaliation for her complaints and to cover up his discriminatory conduct. Accordingly, defendant's motion to dismiss the retaliation claim is denied.

### III. *CONCLUSION*

For the above-stated reasons, defendant's motion to dismiss the Title VII claims and the New York State Human Rights Law claims, including the retaliation claims, is denied. With plaintiff's consent, however, the claim brought under the New York City Human Rights Law is hereby dismissed.

SO ORDERED.

---

unlike the Delaware State College procedure, denial of tenure at the Long Island University does not necessarily mean that the faculty member will be terminated.

**2.** Interestingly, the only male denied tenure was Hispanic.